STATE OF IOWA, Appellee, v. GEORGE E. BROWN, Appellant.

**CRIMINAL LAW:** Verdict on Circumstantial Evidence. Circumstantial evidence in support of a charge of assault with intent to murder reviewed, and held insufficient to meet the rule that such evidence must be consistent with guilt, and inconsistent with any rational theory of innocence.

*Appeal from Mahaska District Court.*—H. F. WAGNER, Judge.

MAY 11, 1920.

THE defendant was indicted upon the charge of assault with intent to commit murder, and pleaded not guilty. On trial to a jury, he was convicted of the lesser included offense of assault with intent to inflict great bodily injury, and from the judgment entered on the verdict, he appeals.—*Reversed.*

*Thomas J. Bray* and *John E. Lake,* for appellant.

*H. M. Havner,* Attorney General, *M. W. O'Brien,* County Attorney, *C. W. Lyon,* Assistant Attorney General, and *James A. Devitt,* for appellee.

WEAVER, C. J.—The defendant, George E. Brown, and complaining witness, Addie Brown, are husband and wife.

They were divorced in 1916, but within a few months married again. Their reconciliation was temporary only, and differences again arose between them. In February, 1919, they separated, the wife refusing to live longer with her husband. In March, 1919, she brought suit for a divorce. About the same time, defendant caused the arrest of his wife, on charge of adultery. The record does not show what became of these legal proceedings, but it may be inferred that the criminal charge was dropped or dismissed. It appears that, during March, defendant sought out his wife, on two or more occasions, to persuade her to resume family relations. At one of these meetings, according to her story, he had a 38 revolver in his hand, and said to her that, if she refused to live with him, she should never live with any other man. She does not say, however, that he used the weapon in a threatening manner. They were then living in the town of Fremont, where plaintiff was employed as a telephone operator.

On Sunday, March 31, 1919, defendant was also in town. At about 10 o'clock on the evening of that day, Mrs. Brown and her co employee, Miss White, closed the telephone office, and retired for the night in an adjoining room occupied by them. They slept in the same bed. Shortly after retirement, it is alleged that two shots were fired through or from the door of their room, in the direction of the bed. The women gave an alarm, and called in two or three persons, who at first discovered no traces of the alleged assault; but there is evidence that, on the following morning, two 38-caliber bullets were found, one being imbedded somewhat loosely in the wall of the room; and there was a mark or bruise upon the bedstead, indicating, as the witnesses assume, the line of a bullet's flight from the door, a few inches above the bed. The second bullet, it is claimed, had penetrated some of the clothing, hanging upon the frame or post of the bedstead. Earlier in the

evening, defendant arranged with an auto driver to take him to Ottumwa. They left Fremont about the hour of 11:30 P. M. No one saw the shots fired, or claims to have personal knowledge of the identity of the perpetrator. In leaving the car at Ottumwa, defendant asked the driver not to say anything about where he (defendant) was going, or about his leaving town. A hardware merchant produced by the State testified that, about the 15th of March, defendant came to his store, seeking to purchase cartridges of 32 caliber. Another witness testifies that, at some time and place which he cannot or does not specify, defendant said to him that he was "going to wake them up over there, one of these nights," but, on being particularly questioned, he answered, "I don't know who he was going to wake up. He didn't tell me who he was going to wake up;" but says he later reported the language "to the girls," Mrs. Brown and Nell White. By another witness, it was shown that defendant had said he "could get into the telephone building if he wanted to."

The foregoing is the substance of the case made by the State's evidence.

The defendant, as a witness, denies that he made the assault, or fired the shot, or had anything whatever to do with the alleged offense, and suggests that the charge has been "framed," to get him out of the way, or to aid his wife in getting a divorce. He admits that, at one time, he had owned a 38 revolver, but says he had traded it off, a month before the alleged shooting, and that, on the day in question, he was wholly unarmed, and that, on the evening of the shooting, he went to the garage, about 9:30 P. M., to arrange for a ride to Ottumwa, where he had employment. The proprietor of the garage was expecting a call to Ottumwa, later in the evening, and it was arranged that defendant should go with him. Except for a few minutes' absence, to go to a stable, where a horse owned by him was being

kept, he remained at the garage practically all the time until the driver was ready to start to Ottumwa. His statements as to where he was from 9:30 P. M. until he left for Ottumwa are corroborated, to a material extent, by the garage man. Several citizens of the place testify to his general good character as a peaceable and law-abiding person, and his standing in this respect is not denied or impeached by the State.

Various exceptions have been presented to the rulings of the court in the course of the trial, but the one controlling exception taken is to the sufficiency of the evidence to support the verdict.

The most which can be said of the showing made by the State is that the jury could have found therefrom that appellant *could* have fired the shots, and that the inharmonious relations between him and his wife *may* have led him to the act. But something more than this is needed to sustain a finding that he *did* do it. No witness saw him in the act. If he is convicted and punished, it must be upon the circumstantial evidence alone; and these circumstances, as a whole, must not only be consistent with the conclusion of his guilt, but must be inconsistent with any rational theory of his innocence. It is not enough that they justify a suspicion of his guilt, but they must be such as to convince the impartial mind, to a moral certainty, of guilt. The case made by the State does not measure up to this standard. Defendant's presence in town on that evening is, in itself, of no special significance. It was his home. His trip to Ottumwa has no necessarily unfavorable significance. He swears he had obtained employment there, to begin on the following morning, and this is not denied or disproved. There was nothing furtive about his errand to the garage, or his stay there practically all the evening, until the driver was ready to start for Ottumwa. It may be possible that he had opportunity to make

his way into the telephone building, had he been so minded, but the same would be said of any other person in or about the town at that time. There is no evidence that he was armed. The fact that he had, at some former time, owned a 38 revolver, though doubtless admissible, is, of itself, no evidence that he had it on his person on this occasion. His purchase or attempted purchase of 32-caliber cartridges, two weeks or more before that time, not only has no tendency to show that he fired the 38-caliber bullets used in the alleged assault, but the inference, if any, to be drawn therefrom is in his favor. His request to the auto driver (which he denies) to say nothing of his trip to Ottumwa may or may not be unfavorable to him, though, standing alone, it is of little significance. There is no claim or suggestion that he sought to flee the country. The evidence of the witness Baccus, that defendant said to him that "some night he was going to wake them up over there," is hardly worth considering. He fixes neither time nor place; says he does not know what or to whom the defendant referred, or what he meant by "waking them up." His testimony is of that vague, uncertain kind which seems to imply something, but says nothing; and no amount of examination and cross-examination by counsel on either side was of any avail in extracting from him a grain of definite information.

Moreover, we think it is a circumstance of some weight, though, of course, not controlling, that the jury acquitted the defendant of any intent to murder or commit manslaughter, and convicted him only of intent to inflict great bodily injury. If anybody committed the alleged assault with a deadly weapon like a revolver, fired at the sleeping form of a human being, he intended murder, and nothing else; and the verdict is hardly explicable, except on the theory that the jurors were impressed with the State's failure to establish the assault with intent to murder, and

they realized the consequent necessity for an acquittal therefrom, yet convicted him of the lower included offense, out of regard for the lingering suspicion in their minds that, if all the facts could have been developed in evidence, he might have been found guilty of the more serious crime.

But, disregarding this somewhat anomalous feature of the verdict, and treating it as if returned upon an indictment directly ·charging assault with intent to inflict great bodily injury, we are still of the opinion that the record is insufficient to justify a· conviction, and the judgment appealed from is, therefore,—*Reversed.*

EVANS, PRESTON, and SALINGER, JJ., concur.